```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  7 | 15 | 16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

ENERGY INTELLIGENCE GROUP, INC. and
ENERGY INTELLIGENCE GROUP (UK)
LIMITED,

              Plaintiffs,

     - against -

COWEN AND COMPANY, LLC,

            Defendant.

------------------------------------X

**MEMORANDUM AND ORDER**

14 Civ. 3789 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Defendant Cowen and Company, LLC ("Cowen") moves to disqualify the law firm of Powley & Gibson, P.C. ("Powley Gibson") as plaintiffs' counsel in this case, on the ground that Keith Sharkin, now one of four partners at Powley Gibson, had previously represented Cowen on a substantially related matter while a partner at another firm. For the following reasons, defendant's motion to disqualify Powley Gibson is granted.

## I. BACKGROUND

On May 28, 2014, plaintiffs Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited (collectively, "plaintiffs" or "EIG"), represented by Powley Gibson, filed this action against Cowen. Plaintiffs, who sell subscriptions to energy

industry newsletters that they produce, seek to hold Cowen liable for two categories of copyright infringement related to alleged unauthorized internal email forwarding of EIG publications. First, EIG contends that Cowen is liable for alleged copyright infringement by Dahlman Rose & Company, LLC ("Dahlman"), a boutique investment bank and broker-dealer acquired by Cowen's parent company in early 2013.[1]  Second, EIG seeks to hold Cowen liable for Cowen's own allegedly infringing conduct subsequent to its acquisition of Dahlman.

In support of the motion to disqualify, Iveta Hlinka, Cowen's Control Room and Research Compliance Manger since February 2011, has sworn that in response to the EIG suit, Cowen sought legal advice with respect to its copyright policies and practices.  Aff. of Iveta Hlinka ("Hlinka Aff.") ¶ 5-6.  After interviewing several firms, in May of 2015, Cowen selected Keith Sharkin and Clark Lackert, two partners of the law firm of Reed Smith LLP ("Reed Smith"), id. ¶ 6, to develop a "corporate copyright policy for use by Cowen, as well as related training materials and sessions for its employees."  Id. ¶ 11 (quotation marks omitted).  Hlinka affirms that over the course of their engagement, Sharkin and Lackert received confidential information related to Cowen's

---

[1]     Cross-motions for partial summary judgment on the issue of Cowen's successor liability for Dahlman's alleged copyright infringement are also pending before the Court.  We resolve those motions in a separate Memorandum and Order filed today.

business practices and use of copyrighted materials in general, as well as facts related to this case in particular.  Specifically, Hlinka asserts that the following took place:

- A May 7, 2015 meeting in which Cowen representatives and Sharkin and Lackert "discussed the background of the EIG case and our desire to update Cowen's copyright policy and develop employee training procedures that would assist us in addressing any copyright issues we may have in the future."  Hlinka Aff. ¶ 8.

- A June 2015 meeting in which Cowen provided Sharkin and Lackert "additional background information regarding Cowen's copyright policies and procedures, including confidential information pertaining to Cowen's business practices.  The Sharkin-Lackert Team requested that Cowen provide a complete list of all of Cowen's past and current publication subscriptions, including EIG publications.  Cowen provided that list to Reed Smith shortly thereafter." <u>Id.</u>  ¶ 11.

- An August 24, 2015 meeting, during which Cowen representatives and Sharkin and Lackert "discussed certain facts related to the EIG case.  As in previous meetings, the discussion included confidential information related to Cowen's business practices." <u>Id.</u> ¶ 12.

- A September 2015 meeting during which Robert Fagin, Head of Cowen's Equity Research Division who was deposed in connection with this action, and others met with Sharkin and Lackert "to discuss copyright law related to the Division's publications.  During that meeting, Mr. Fagin and his colleagues discussed sensitive and confidential information related to Cowen's publication practices." <u>Id.</u> ¶ 13.

- A January 12, 2016 meeting attended by Mr. Fagin and others in the Equity Research Division, during which "Mr. Fagin and his colleagues discussed Cowen's confidential publishing practices and copyright policies at length and in detail with the Sharkin-Lackert Team." <u>Id.</u> ¶ 15.

Hlinka concludes that "I, along with other Cowen employees, have discussed all of the copyright practices and policies that were discussed in detail with the Sharkin-Lackert Team with our litigation counsel in the EIG case in an effort to aid in developing Cowen's defenses in this action." Id. ¶ 16.

Sharkin responds by declaration that "[o]ther than being sent a copy of the complaint after our first meeting, I was not given any other materials or pleadings related to the EIG case." Decl. of Keith E. Sharkin ("Sharkin Decl.") ¶ 5. He explains that he was never advised that the copyright policy he was tasked with creating was for use in the EIG case, and that his understanding was that the policy was solely for "future use." Id. ¶ 6. He further asserts that "[e]xcept during the initial interview with Cowen in May where we were told that a copyright case was pending, I do not recall any substantive discussions about the EIG case," nor "was [I] . . . even made aware of who was representing Cowen in the EIG case. . . ." Id. ¶ 8. See also id. ¶ 11 ("While I participated in all but one meeting with Cowen . . . [t]o the best of my recollection, none of the form and content or topics dealt with the EIG case or any EIG publication."); id. ¶ 12 ("I do not recall being provided with nor am I aware of any 'sensitive and confidential information' pertaining to Cowen and its business practices or that was in any way related to the EIG case aside from the publicly filed complaint."); id. ("I do not recall

substantively discussing the EIG litigation with Robert Fagin, nor
was I advised by Cowen that he had been deposed in this
litigation."); id. ¶ 13 ("I was not a party to or otherwise aware
of any conversations between Cowen and their litigation counsel in
the EIG case about the copyright policy Reed Smith was
preparing.").

Sharkin left Reed Smith in February 2016 and joined Powley
Gibson as a partner on March 1, 2016.  Sharkin Decl. ¶¶ 1, 9.  On
March 24, 2016, Cowen's litigation counsel received a letter from
Powley Gibson stating that Sharkin had joined the firm as of March
1.  Decl. of Demian A. Ordway ("Ordway Decl.") Ex. 1.  This was
the first that Cowen learned that Sharkin was no longer at Reed
Smith.  Hlinka Aff. ¶ 17.  The March 24 letter stated that Sharkin's
previous engagement was "entirely unrelated to the subject matter
of the pending litigation between Energy Intelligence Group and
Cowen."  Ordway Decl. Ex. 1.  However, the letter continued, "out
of an abundance of caution," Sharkin would not participate in this
case, and Powley Gibson had instituted an "ethical wall" around
Mr. Sharkin with respect to this case.  Id.

Powley Gibson explains that the ethical wall included: (1) a
March 1, 2016, memo informing the entire office of the ethical
screen and instructing that no one was to discuss the case with
Sharkin or copy him on any communications related to the case; (2)
an instruction to Sharkin not to discuss any work Reed Smith did

for Cowen; (3) physical segregation of case files from other files in the office, marked to indicate they are part of an ethical screen and stored in a locked filing cabinet to which Sharkin does not have access; (4) configuration of Powley Gibson's computer systems so that Sharkin cannot access electronic files related to the Cowen litigation.  Pls.' Mem. of Law in Opp'n to Def. Cowen and Co.'s Mot. to Disqualify 17.   Thus, Powley Gibson asserts, Sharkin has had no involvement whatsoever in this particular litigation between EIG and Cowen.  Id. at 18.

However, Sharkin is listed as EIG's attorney of record in a similar copyright infringement action against a different party. See Energy Intel. Grp., Inc. v. Credit Agricole Corp. and Inv. Bank, No. 16 Civ. 2155 (RJS) (S.D.N.Y.).   With respect to that case, Sharkin wrote to the Court on June 22, 2016, stating:

> [C]ontrary to defendant's statement, I am not actively litigating copyright claims for EIG.  While I am listed as an attorney of record in one other case, my role was limited to a review of the complaint before it was filed and not substantive in any manner.  I have had no contact with the client or been involved in any other cases for EIG.

Ltr. of June 22, 2016, at 1.

Cowen filed its motion to disqualify Powley Gibson on May 11, 2016.  Given that oral argument on the pending summary judgment motions had been previously scheduled for mid-June, we ordered expedited letter-responses.  In a telephone conference of May 19, 2016, we ordered full briefing of the disqualification motion, and

also directed that Powley Gibson not argue the summary judgment motions, given that the outcome of the disqualification motion was unknown.[2]   Oral argument on both the cross-motions for partial summary judgment and this disqualification motion was held on June 14, 2016.   During oral argument, after the Court posed questions about the meaning of Sharkin's statements in his affidavit regarding what he was told by Cowen, EIG's counsel proposed: "I think we have to have an in camera review."  Oral Arg. Tr. ("Tr.") 19, June 14, 2016.  Cowen's counsel readily agreed to provide an affidavit, and the Court made clear that it would be an in camera and sealed submission.  Id.  Accordingly, on June 21, we received a supplemental ex parte affidavit from Hlinka for in camera review, which describes in more detail Cowen's reasons for retaining Reed Smith and its discussions with Sharkin and Lackert.   We subsequently denied Powley Gibson's request, made in a letter dated June 20, that Sharkin himself be able to review and respond to the in camera submission.  Finally, by letter dated July 8, 2016, Cowen stated that it had no objection to our use of Exhibit 3 to the Supplemental Affidavit of Iveta Hlinka ("Hlinka Suppl. Aff.") in this Memorandum and Order.

---

[2]      On the summary judgment motions, plaintiffs were represented at oral argument by the law firm of Smith Gambrell & Russell, LLP ("Smith Gambrell"), which, since May of 2015, has been co-counsel for EIG in this matter.

## II. DISCUSSION

### A. Governing Law

A motion to disqualify an attorney is committed to the discretion of the district court. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72-73 (2d Cir. 1990). Such motions are generally disfavored given their potential abuse for tactical purposes and because disqualification undermines a party's right to employ counsel of its choice. See Scantek Med., Inc. v. Sabella, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008). They also inevitably cause delay and expense that are not productive in resolving the litigation. In deciding the motion, the Court endeavors "to balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted).

In cases of successive representation, the Second Circuit has held that an attorney may be disqualified if:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant

> privileged information in the course of his prior
> representation of the client.

Id. at 133 (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)); see also N.Y. R. Prof'l Conduct 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.").

"An attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." Hempstead Video, 409 F.3d at 133; see N.Y. R. Prof'l Conduct 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so . . . ."). However, this presumption of confidence-sharing within a firm may be rebutted. Hempstead Video, 409 F.3d at 133.  One way to rebut the presumption is to demonstrate "a timely and effective ethical screen that fences the disqualified attorney from the other attorneys in the firm in connection with the case for which the conflict is alleged." Am. Int'l Grp., Inc. v. Bank of Am. Corp., 827 F. Supp. 2d 341, 346 (S.D.N.Y. 2011) (internal quotation marks omitted).  Yet among small law firms, sufficient ethical screens are difficult, if not impossible, to maintain.  See Filippi v.

Elmont Union Free Sch. Dist. Bd. of Educ., 722 F. Supp. 2d 295, 307-08 (E.D.N.Y. 2010) ("Although the presumption that client confidences are shared within a firm may certainly be rebutted, the presumption is much stronger within a small firm than a large firm.  It is possible that the circumstances of a small firm may be such that a court will not be able to determine whether the proposed or implemented screening measures will effectively prevent disclosure."); Mitchell v. Metro. Life Ins. Co., No. 01 CIV. 2112 (WHP), 2002 WL 441194, at *9 (S.D.N.Y. Mar. 21, 2002) ("The Second Circuit has expressed consistent skepticism about screening as a remedy for conflicts of interest and declared that such procedures ultimately must be rejected if they are subject to doubt. . . .  Courts have only approved screening procedures in the limited circumstances where a conflicted attorney possesses information unlikely to be material to the current action and has no contact with the department conducting the current litigation, which typically occurs only in the context of a large firm.").

**B. Analysis**

It is undisputed that Cowen is Sharkin's former client.  We therefore consider (1) whether Sharkin's prior engagement for Cowen and the instant suit are substantially related and (2) whether Sharkin had or was likely to have had access to privileged information in the course of his work for Cowen.  We then consider

10

whether the ethical wall Powley Gibson imposed is sufficient to rebut the presumption of confidence sharing within the firm.

**1. Substantial Relationship**

The substantial relationship between the two representations is readily apparent as a matter of sequence, logic, and affidavit evidence.  The relevant inquiry is "whether the successive representations share common material <u>factual</u> issues." <u>Olajide v. Palisades Collection, LLC</u>, No. 15-CV-7673 (JMF), 2016 WL 1448859, at *3 (S.D.N.Y. Apr. 12, 2016) (emphasis in original) (internal quotation marks omitted).  Here, there are three indisputable facts that, in and of themselves, are sufficient to reach the conclusion that there is a substantial relationship between this litigation and the retention of Sharkin and his then-firm Reed Smith.  First, it is indisputable that the retention followed the filing of this case.  Second, it is undisputed that Cowen provided Sharkin with a copy of the complaint in this case at the outset of the representation (or perhaps even earlier).  Third, Sharkin's co-counsel on the Cowen representation, after an early meeting and following their retention, sent this email to Hlinka on June 19, 2015, with a copy to Sharkin:

> We are pleased that you have chosen us to work on this important project.  We will start the preparatory work immediately and look forward to working with you and your team.
>
> . . . .

> As far as contacting your current outside counsel on the copyright litigation, please send us the contact information, and also kindly advise them that we will be calling them.

Hlinka Suppl. Aff. Ex. 3.  Cf. Sharkin Decl. ¶ 8 ("I was not even made aware of who was representing Cowen in the EIG case since I was not provided any other pleadings in the case.").

In these circumstances, Powley Gibson's argument that these two representations were untethered cannot be accepted.  However, beyond the indisputable evidence just described, there is additional record evidence to support the conclusion that there is a substantial relationship between the two matters.  This evidence is in the form of two affidavits from Iveta Hlinka, Control Room and Research Compliance Manager for Cowen since February of 2011. One affidavit, sworn to on May 11, 2016, is publicly docketed, and the other was submitted in camera.  Based on the sequence and the transmittal of EIG's complaint to Reed Smith, as well as the logical and strategical reasons to conduct a review of Cowen's copyright policies and practices, this Court did not have a need for a supplemental in camera affidavit, but saw no reason to object to Powley Gibson's suggestion that I receive additional information.[3]   Both these affidavits strongly support the

---

[3]    In this regard, the Court appreciates Sharkin's frustration at not having access to this additional affidavit.  However, the affidavit was drafted based on the Court's assurance that it would be received in camera and thus not available to plaintiffs.  The Powley Gibson firm has the Court's assurance that its inability to respond has had no impact on the Court's decision as the in

substantial relationship between the two representations.  Further in this regard, Sharkin's repeated point that he "had no role in the EIG case and was never asked to comment or opine on any aspect of it," Sharkin Decl. ¶ 6, responds to an argument that was never made.  Cowen has not suggested that Sharkin was hired as "co-counsel" on the EIG case.

In sum, there is simply no doubt that the EIG lawsuit caused Cowen's retention of Reed Smith and that the two matters share common material factual issues.

### 2. Access to Privileged Information

Sharkin's affidavit stresses that the copyright policy that he was engaged to formulate was strictly limited to future use and not to address past issues.  Sharkin Decl. ¶¶ 6-7.  This assertion, while relevant to the substantial relationship prong of the disqualification standard, is also relevant to the question of whether Sharkin had access to, or was likely to have had access to, privileged information in the course of his work for Cowen. The Second Circuit has explained that

> in order to grant a disqualification motion, a court
> should not require proof that an attorney actually had
> access to or received privileged information while
> representing the client in a prior case.  Such a
> requirement would put the former client to the Hobson's
> choice of either having to disclose his privileged
> information in order to disqualify his former attorney

---

camera submission was simply confirmatory of the conclusion the Court had reached prior to its receipt.

or having to refrain from the disqualification motion altogether.

Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 740 (2d Cir. 1978).

Even apart from Cowen's sworn statements that Sharkin was in fact provided with confidential information, a new copyright policy must be created in the context of an existing practice.  As such, it is difficult for the Court to conceive that a competent intellectual property lawyer would not learn about a client's past and current practices, information which could very well contain harmful admissions, in the process of formulating a going forward policy.

Based on the record before us, we have no hesitancy reaching the conclusion that Sharkin had "access to or received privileged information while representing" Cowen.   Accordingly, Sharkin himself is disqualified from participating in this litigation. Thus, we turn to the issue of whether Powley Gibson is likewise disqualified.

### 3. Imputation and the Ethical Wall

"The touchstones of the imputation inquiry are the significance of the prohibited lawyer's involvement in and knowledge of the former client's confidences or secrets." Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc., 325 F. Supp. 2d 270, 278

(S.D.N.Y. 2004).    The caselaw establishes a presumption of imputation.

EIG's ethical wall is insufficient to rebut the presumption of imputation.  First, EIG is a very small firm consisting of four partners and about ten other attorneys in a single office, which by its nature imperils an ethical screen.  See Cheng v. GAF Corp., 631 F.2d 1052, 1058 (2d Cir. 1980) (disqualifying 35-attorney firm), vacated on jurisdictional grounds, 450 U.S. 903 (1981);[4] Filippi, 722 F. Supp. 2d at 307-08 (E.D.N.Y. 2010) (disqualifying six-attorney firm); Crudele v. N.Y.C. Police Dep't, Nos. 97 Civ. 6687 (RCC), 97 Civ. 7366 (WHP), 97 Civ. 9515 (JSR), 97 Civ. 9516 (JSR), 2001 WL 1033539, at *4 (S.D.N.Y. Sept. 7, 2001) (disqualifying 15-attorney firm); Decora Inc. v. DW Wallcovering, Inc., 899 F. Supp. 132, 141 (S.D.N.Y. 1995) (disqualifying 44-attorney firm); Yaretsky v. Blum, 525 F. Supp. 24, 29-30 (S.D.N.Y. 1981) (disqualifying approximately 30-attorney firm).    Second, Sharkin is representing EIG in another substantially similar case. See Energy Intel. Grp., No. 16 Civ. 2155 (RJS) (S.D.N.Y.).    For these reasons, we conclude that Powley Gibson has not sufficiently rebutted the presumption of imputed conflict.

---

[4]    Even though the vacated decision in Cheng is not binding precedent, courts have since relied on its reasoning.  See Hempstead Video, 409 F.3d 138 n.5; Marshall v. State of N.Y. Div. of State Police, 952 F. Supp. 103, 112 (N.D.N.Y. 1997) (disqualifying 15-member firm); Baird v. Hilton Hotel Corp., 771 F. Supp. 24, 25, 27 (E.D.N.Y. 1991) (disqualifying nine-member firm).

Beyond finding that the established caselaw easily supports our conclusion that Powley Gibson has not rebutted the presumption of imputed conflict, there are additional facts in the record that cause us concern and counsel against finding an ethical screen solution adequate.  We start with the fact that Sharkin did not inform Cowen before he joined Powley Gibson that he was doing so, despite the fact that Sharkin and Powley Gibson knew of both representations.[5]  Tr. 8-9.  Thereafter, Powley Gibson waited more than three weeks to inform Cowen.  We are also deeply troubled by Powley Gibson's position at oral argument that Sharkin could represent EIG in this very case.  Tr. 7-8.  Similarly, Sharkin's suggestion in his letter of June 22, 2016, that "contrary to defendant's statement, I am not actively litigating copyright claims for EIG," when he acknowledges reviewing the complaint in 16 Civ. 2155 (RJS) (S.D.N.Y.) and is listed as attorney of record on the docket sheet, can hardly give the Court confidence that the Powley Gibson firm and its members are sufficiently sensitive to ethical considerations.

---

[5]    We reject Powley Gibson's suggestion at oral argument that Sharkin was somehow ethically restricted from speaking to Cowen because he was moving firms. Tr. 9.  In this context, the opposite is true.  Sharkin was not seeking to recruit Cowen as a client at Powley Gibson, but instead moving to a firm in an adverse position against Cowen, and he could have approached Cowen for a conflict waiver.

Finally, we note that the prejudice to EIG from the disqualification of Powley Gibson is mitigated by the fact that Smith Gambrell has appeared as EIG's co-counsel for over a year.

## III. CONCLUSION

For the foregoing reasons, defendant's motion to disqualify Powley Gibson, ECF No. 81, is granted.

**SO ORDERED.**

Dated:    New York, New York
          July 15, 2016

                                   NAOMI REICE BUCHWALD
                                   UNITED STATES DISTRICT JUDGE

17